**STATE OF TENNESSEE**
**Department of Commerce and Insurance**
**500 James Robertson Parkway**
**Nashville, TN 37243-1131**
**PH - 615.532.5260, FX - 615.532.2788**
**brenda.meade@tn.gov**

June 08, 2010

Mutual Of Omaha Insurance Company          Certified Mail
Mutual Of Omaha Plaza                      Return Receipt Requested
Omaha, NE  68175                           7009 2820 0003 2647 3618
NAIC # 71412                               Cashier # 3569

Re:   Pearlie Green & Gregory Burks   V.   Mutual Of Omaha Insurance Company

      Docket # Ct-002606-10

To Whom It May Concern:

Pursuant to Tennessee Code Annotated § 56-2-504 or § 56-2-506, the Department of
Commerce and Insurance was served May 28, 2010, on your behalf in connection with the
above-styled proceeding.  Documentation relating to the subject is herein enclosed.

Brenda C. Meade
Designated Agent
Service of Process



Enclosures

cc: Circuit Court Clerk
    Shelby County
    140 Adams Street, Rm 324
    Memphis, Tn  38103



EXHIBIT

A

### STATE OF TENNESSEE
### CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE

#### SUMMONS IN A CIVIL ACTION

Pearlie M. Green and
Gregory A. Burks, Individually

VS.                                          Docket No. _C7-002606  10_

                                             JURY DEMANDED

Mutual of Omaha Insurance Company

To the above named defendant:

   Mutual of Omaha Insurance Company
   by the Tennessee Commissioner of Insurance
   500 James Robertson Pkwy.,
   Nashville, Tennessee 37219

You are hereby summoned to defend a civil action filed against you in the circuit court, Shelby County, Tennessee.
Your defense must be made within thirty (30) days from the date this summons is served upon you. You are
directed to file your defense with the clerk of the court and send a copy to the plaintiffs' attorney at the address listed
below. If you fail to defend this action by the above date, judgment by default can be rendered against you for the
relief sought in the complaint.

| Attorney for plaintiff: | Filed, Issued & Attested this the _24_ day of _May_, 2010. |
|---|---|
| Russell E. Reviere, (BPR No. 07166)<br>Nathan E. Shelby, (BPR No. 26583)<br>Michael Joiner, (BPR No. 28221)<br>Rainey, Kizer, Reviere & Bell, P.L.C.<br>P. O. Box 1147<br>Jackson, TN 38302-1147<br>(731) 423-2414 | Jimmy Moore<br>**Circuit Court Clerk**<br><br>**Deputy Clerk** |
| **TO THE PROCESS SERVER:**<br>Please execute this summons and make your return within thirty (30) days of issuance as provided by law. | **DATE RECEIVED**<br><br><br>**Process Server** |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## NOTICE

To the defendant(s):

Tennessee law provides a four thousand dollar ($4,000.00) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized, you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

## RETURN ON PERSONAL SERVICE OF SUMMONS

[   ]   I hereby certify and return that I served this summons together with the complaint as follows on the _____

day of _____, 2010:

_____

_____

_____

---

**RETURN ON SERVICE OF SUMMONS BY MAIL**

[   ]   I hereby certify and return that on the _____ day of _____, \_\_\_\_\_, I sent, postage prepaid, by registered return receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in case #_____ to the defendant,

_____. On the _____ day of _____, 2010, I received the return receipt, which had been signed by _____ _____ on the _____ day of _____, 2010. The return receipt is attached to this original summons to be filed by the Circuit Court Clerk.

| | |
|---|---|
| **Sworn to and subscribed before me on this** _____ **day of** _____, **2010.** <br><br> Signature of    [ ] Notary Public    [ ] Clerk <br><br><br><br> My commission expires: | **Signature of plaintiff, plaintiff=s attorney or other person authorized by statute to serve process.** |

ATTACH RETURN RECEIPT

HERE (IF APPLICABLE)

| | |
|---|---|
| **CERTIFICATE**<br><br>I, _____, Clerk of the Circuit Court in the State of Tennessee, _____ County, do certify this to be a true and correct copy of the original summons issued in this case. | CLERK<br><br><br>By:_____<br>    Deputy Clerk |

# STATE OF TENNESSEE
## CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE

### SUMMONS IN A CIVIL ACTION

Pearlie M. Green and
Gregory A. Burks, Individually

VS.                                          Docket No. *CT0 02 606 10*
                                             JURY DEMANDED

Mutual of Omaha Insurance Company

To the above named defendant:

      Mutual of Omaha Insurance Company
      by the Tennessee Commissioner of Insurance
      500 James Robertson Pkwy.,
      Nashville, Tennessee 37219

You are hereby summoned to defend a civil action filed against you in the circuit court, Shelby County, Tennessee.
Your defense must be made within thirty (30) days from the date this summons is served upon you.  You are
directed to file your defense with the clerk of the court and send a copy to the plaintiffs' attorney at the address listed
below.  If you fail to defend this action by the above date, judgment by default can be rendered against you for the
relief sought in the complaint.

| Attorney for plaintiff: | Filed, Issued & Attested this the _24_ day of |
|---|---|
| Russell E. Reviere, (BPR No. 07166)<br>Nathan E. Shelby, (BPR No. 26583)<br>Michael Joiner, (BPR No. 28221)<br>Rainey, Kizer, Reviere & Bell, P.L.C.<br>P. O. Box 1147<br>Jackson, TN 38302-1147<br>(731) 423-2414 | _May_, 2010.<br><br>*Jimmy Moore*<br>_____<br>**Circuit Court Clerk**<br><br>_____<br>**Deputy Clerk** |
| **TO THE PROCESS SERVER:**<br>Please execute this summons and make your return<br>within thirty (30) days of issuance as provided by<br>law. | **DATE RECEIVED**<br><br>_____<br><br>**Process Server** |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## NOTICE

To the defendant(s):

Tennessee law provides a four thousand dollar ($4,000.00) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized, you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

## RETURN ON PERSONAL SERVICE OF SUMMONS

[  ]    I hereby certify and return that I served this summons together with the complaint as follows on the _____

day of _____, 2010:

_____

_____

_____

_____

---

**RETURN ON SERVICE OF SUMMONS BY MAIL**

[  ]    I hereby certify and return that on the _____ day of _____ , _____, I sent, postage prepaid,

by registered return receipt mail or certified return receipt mail, a certified copy of the summons and a copy of

the complaint in case #_____ to the defendant,

_____. On the _____ day of _____, 2010, I

received the return receipt, which had been signed by _____ _____ on the

_____ day of _____, 2010. The return receipt is attached to this original summons to be filed

by the Circuit Court Clerk.

| | |
|---|---|
| **Sworn to and subscribed before me on this _____** <br><br> **day of _____, 2010.** <br><br> Signature of    [ ] Notary Public    [ ] Clerk <br><br><br><br> My commission expires: | **Signature of plaintiff, plaintiff=s attorney or other** <br><br> **person authorized by statute to serve process.** |

ATTACH RETURN RECEIPT

HERE (IF APPLICABLE)

| **CERTIFICATE** | |
|---|---|
| I, _____, Clerk of the Circuit Court in the State of Tennessee, _____ County, do certify this to be a true and correct copy of the original summons issued in this case. | CLERK<br><br><br>By:_____<br>     Deputy Clerk |

09743-67888 (NES)

## IN THE CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE

| | |
|---|---|
| PEARLIE M. GREEN and | ) |
| GREGORY A. BURKS, Individually | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) |
| MUTUAL OF OMAHA INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

Docket No. CT-001406-10

JURY DEMANDED

### COMPLAINT

Comes now the Plaintiffs, Pearlie M. Green and Gregory A. Burks, by and through counsel and brings this civil action against the Defendant for its actions and breach of contract, violation of Tennessee statutory law, violation of Tennessee common law, and violation of the Plaintiffs' constitutionally guarantee rights and other wrongs.

### JURISDICTION AND VENUE

1.      Pearlie M. Green is a citizen and resident of Shelby County, Tennessee.

2.      Gregory A. Burks is a citizen and resident of Crittenden County, Arkansas.

3.      Mutual of Omaha Insurance Company is a foreign corporation, registered to do business in the State of Tennessee and headquartered in Omaha Nebraska.

4.      Mutual of Omaha Insurance Company offers Medicare supplements, coverage for long-term care, life, annuities, disability, critical illness, investments, dental, dental benefits, voluntary benefits, 401k plans, group annuities, institutional investments, and other services related, but not limited to, the insurance industry in many states including Tennessee.

1

09743-67888 (NES)

5.    Mutual of Omaha Insurance Company offered life insurance coverage for the lives of, but not limited to, Pearlie Green and Robert Billups.

6.    The advertisement and enticement which preceded the execution of the life insurance contract took place in Shelby County, Tennessee. Further, the contract was executed in Shelby County, Tennessee.

## FACTUAL ALLEGATIONS

7.    On or about the month of January 2007, Pearlie Green received a prescreened offer of insurance from Mutual of Omaha Insurance Company.

8.    Ms. Green never requested this offer of insurance.

9.    The offer of insurance, attached as Exhibit A, along with the policy of which the application was a part, provided three monetary options for coverage and two types of plan options for coverage.

10.    The monetary options available to Ms. Green, according to this advertisement, were either one million ($1,000,000.00) dollars, seven hundred fifty thousand ($750,000.00) dollars, or five hundred  thousand ($500,000.00) dollars.

11.    The different plan types available to Ms. Green were either an individual plan or a family plan.

12.    The premiums required differed among the monetary values and types of plans chosen by the insured.

13.    Ms. Green clearly marked the one million ($1,000,000.00) dollars coverage plan and family plan, and in return agreed to have the premium amount automatically deducted from her checking account each month through the "Easy Pay Option" offered by

2

09743-67888 (NES)

Mutual of Omaha Insurance Company.

14.     The individuals to be insured initially on the application were written in boxes which contained preprinted designations for the individuals to be insured.

15.     The individuals to be insured were Pearlie Green, Robert Billups, Roman Burks and Kimeka L. Galloway.

16.     Robert Billups was listed in the spouse designation, although his name differed from Ms. Green's, because the only other designation in which his name would fit would be a child. In the child designation, Roman Burks and Kimeka Galloway were listed under the children section.

17.     Gregory A. Burks was the listed beneficiary.

18.     On the application, Ms. Green agreed to pay a family plan of thirty-seven dollars and 95/100 ($37.95) per month for her premiums to cover her, Robert Billups, Roman Burks and Kimeka L. Galloway.

19.     At a date following the application for the policy, a representative of Mutual of Omaha Insurance Company, unknown to the Plaintiff, mailed a copy of Ms. Green's application back to her with the name Roman Burks lined out with pen under the persons to be insured. When this application was mailed back it also contained a signature block for signature of Ms. Green stating that she authorized and approved the alterations on her application removing the individuals that had been lined through.

20.     This authorization was never signed by Ms. Green.

21.     As the policy was not effective until a full month past following the application and as evidence by the revising of the application by an unknown individual at the Defendant's office, Mutual of Omaha Insurance Company, fully reviewed and accepted the

3

09743-67888 (NES)

application of Ms. Green. However, the premiums as noted on the policy filed herewith, were for forty-three and 90/100 ($43.90). Upon information and belief, Roman Burks was lined out as an insured by Mutual of Omaha Insurance Company because he was over the age of twenty-one (21). However, upon the application there are no restrictions upon the age of any insured.

22.   Kimeka Galloway, the other child listed to be covered under the policy turned twenty-one (21) on July 26, 2007.

23.   To date, Ms. Green continues to pay the premiums that are automatically deducted from her checking account and they are still based upon family coverage.

24.   This application was submitted on January 25, 2007.

25.   Following the submission of the application, a policy was issued and was in full force and effect.

26.   On August 3, 2009, Robert L. Billups died as a result of complications from a motorcycle accident.

27.   On August 3, 2009, the insurance policy bearing an effective date of 2/26/2007 and a coverage number of E42ADR52-792588-27M had been in full force and effect for more than two (2) years.

28.   Following the death of Mr. Billups on August 3, 2009, a life insurance claim statement for beneficiaries was timely filed with Mutual of Omaha Insurance Company on August 13, 2009.

29.   All documents requested by Mutual of Omaha Insurance Company for processing of the claim, were provided by either Ms. Green or Mr. Burks.

30.   On November 2, 2009, Ms. Connie Whitney, Claim Specialist for Mutual of

4

09743-67888 (NES)

Omaha Insurance Company, sent a letter to Ms. Green denying coverage for the death of Robert Billups.

31.     A bad faith demand letter pursuant to Tenn. Code Ann. §56-7-105 was sent to Mutual of Omaha Insurance Company, and specifically Ms. Connie Whitney, on January 5, 2010.

32.     From the date of the letter, more than sixty (60) days have elapsed prior to the filing of this action.

33.     The insurance policy was required to pay one million ($1,000,000.00) dollars for the accidental death of Robert Billups.

34.     Both Plaintiffs assisted in the investigation launched by Mutual of Omaha Insurance Company into the circumstances surrounding the death of Mr. Billups.

35.     Defendant conducted an investigation, however, Defendant never intended to pay the claim.

36.     Plaintiffs made no fraudulent statements on the application.

## CAUSES OF ACTION

## COUNT I- BREACH OF CONTRACT

37.     Paragraphs 1-36 are hereby re-alleged as if they were fully restated herein.

38.     Plaintiff, Pearlie Green and Defendant entered into a valid contract for insurance covering the life of Robert Billups and Plaintiff.

39.     Plaintiff, Gregory Burks was a beneficiary under the valid contract for insurance covering the life of Robert Billups.

09743-67888 (NES)

40.     Under the contract, Defendant was required to pay one million ($1,000,000.00) dollars according to the policy for the accidental death of Robert Billups, and Plaintiffs made a timely demand for payment that was refused.

41.     Plaintiffs have suffered losses due to the death of Robert Billups.

42.     Defendant refused to pay according to the application and contract executed.


## COUNT II- TENNESSEE CONSUMER PROTECTION ACT

43.     Paragraphs 1-42 are hereby re-alleged as if they were fully restated herein.

44.     Plaintiff brings this action under the Tennessee Consumer Protection Act (hereinafter the "Act"), Tenn. Code Ann. §§47-18-101 et seq.

45.     Plaintiffs are consumers, natural persons, or individuals and thus qualify as a "person" under Tenn. Code Ann. § 47-18-109 (3).

46.     The Tennessee Consumer Protection Act is to be liberally construed in favor of the consumer according to the plain language of Tenn. Code Ann. § 47-18-102.

47.     Defendant is a "corporation" or "other legal or commercial entity however organized" and thus is a "person" under Tenn. Code Ann. § 47-18-103 (9).

48.     Defendant engaged in trade or commerce as defined by Tenn. Code Ann. § 48-18-103 (11).

49.     The providing of insurance under a valid insurance policy in exchange for payment or premiums constitutes trade or commerce under the Act.

50.     The contract provides coverage for the death of Robert Billups and the

09743-67888 (NES)

application anticipates a payment of one million ($1,000,000.00) dollars for the accidental death of Robert Billups.

51.     If Defendant contends that the policy does not provide one million ($1,000,000.00) dollars in coverage for the death of Robert Billups, the unsolicited application mailed to Plaintiff indicating coverage for one million ($1,000,000.00) dollars with no qualifying language for the accidental death of the listed insureds constitutes a deceptive act according to the Act.

52.     Defendant's refusal to pay the claim pursuant to the application and policy constitutes an unfair deceptive act or practice as defined by the Tennessee Consumer Protection Act.

53.     Defendant was negligent in its manner of advertising and executing the policy with Plaintiffs.

54.     Defendant was negligent in its handling of this claim and failure to pay this claim.

55.     Defendant was negligent in the manner it handled its investigation leading to the wrongful denial of the claim.

56.     Defendant either intentionally or negligently refused to investigate this matter fully and as a result the claim was wrongfully denied.

57.     Defendant turned a "blind eye" to the truth in this matter so that they may deny the claim.

58.     Defendant denied the claim in hopes that the Plaintiffs would not seek any further legal action against them.

59.     Defendant has denied the claim in an attempt to "play the numbers" that

09743-67888 (NES)

the Plaintiffs will either be worn down so that the case may be settled for a lesser amount, or that the Plaintiffs may just simply give up their claim.

60. Defendant has denied a valid claim with knowledge that no valid reasons exist to deny said policy.

61. Defendant's acts or practices listed above were unfair and/or deceptive and as such violate the Consumer Protection Act.

62. Defendant committed or engaged in unfair or deceptive acts or practices affecting the conduct of any trade or commerce and constituted unlawful acts or practices in violation of Tennessee Consumer Protection Act.

63. If the policy did not provide one million ($1,000,000.00) dollars of coverage for the accidental death of the persons to be insured listed in the application, the Defendant falsely passed off goods or services as those of another under Tenn. Code Ann. § 47-18-104 (b)(1).

64. Defendant used deceptive representations in connection with goods or services in violation of Tenn. Code Ann. § 47-18-104 (4).

65. Defendant advertised goods or services with the intent not to sell them as advertised if the policy in fact does not provide one million ($1,000,000.00) dollars in coverage for the accidental death of the persons named on the application as insured under Tenn. Code Ann. § 47-18-104 (b)(9).

66. Defendant used statements or illustrations in an advertisement which created a false impression of the amount or quality of the services offered and misrepresented the policy in such a manner that later, on disclosure of the true facts, Plaintiffs would have switched from the advertised policy to another policy in violation of

8

09743-67888 (NES)

Tenn. Code Ann. § 47-18-104 (b)(21).

67.     Defendant also engaged in acts and practices which are deceptive to the consumer and other persons as a violation of Tenn. Code Ann. §47-18-104.

68.     Plaintiffs have suffered an ascertainable loss of money as a result of the use or employment by Defendant of an unfair or deceptive act or practice that is unlawful under the Tennessee Consumer Protection Act.

69.     If the policy of insurance issued by Defendant does not provide one million ($1,000,000.00) dollars in coverage for the individuals listed under persons to be insured for their accidental death pursuant to the application in this matter, Plaintiff, Pearlie Green, individually has suffered a loss as she has paid since the inception of the policy of the premiums for which she believed to be that of one million ($1,000,000.00) dollars in coverage. If Plaintiff, Pearlie Green knew that the policy did not provide one million ($1,000,000.00) dollars in coverage in exact contrast with the application which she submitted and coverage she chose, she would have purchased another policy that provided this coverage amount. Therefore, she has suffered a loss because of her increased risk of insurability from the time of the inception of this policy to date, because the amount of premiums she would have to pay should she find a policy that provides the coverage she anticipated gaining from the application with Defendant, her premiums would be drastically increased if she were even approved for such policy.

70.     The collection of premiums from Plaintiff, Pearlie Green, for a policy that does not provide one million ($1,000,000.00) dollars in life insurance for the event or any other named insured on the applications death, constituted a deceptive act by the

9

09743-67888 (NES)

Defendant.

71.    Defendant's deceptive act of making Plaintiff believe that she and other insurers were receiving one million ($1,000,000.00) dollars in coverage has caused loss to her.

72.    Defendant's dissemination of this application to unsolicited recipients constitutes a pattern and practice of the above listed unfair and deceptive acts, thereby warranting an award of punitive damages.

73.    Defendant also violated the Tenn. Code Ann. § 47-18-104 (b)(12) by representing that a consumer transaction confers or involves rights, remedies or obligations that it does not have or involve or which are prohibited by law.

74.    Defendant has violated Tenn. Code Ann. § 47-18-104 (b)(5) by representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or qualities that they do not have or that a person has a sponsorship approval status, affiliation or connection that such person does not have.

75.    Defendant has violated Tenn. Code Ann. § 47-18-104 (b)(7) by representing that goods or services are a particular standard, quality, or grade, or that goods are of a particular style or model, if they are another.

76.    Defendant has violated Tenn. Code Ann. § 47-18-104 (b)(9) by advertising goods or services with the intent not to sell them as advertised.

77.    Defendant has violated Tenn. Code Ann. § 47-18-104 (b)(19) by representing that a guarantee or warranty confers or involves rights or remedies which it does not have or involve.

78.    Pursuant to Tenn. Code Ann. § 47-18-112, the Consumer Protection Act's

09743-67888 (NES)

remedies are cumulative and supplemental to all other existing remedies invoking that it does not prohibit or exclude using another remedy.

79.    The exceptions from the Consumer Protection Act are set forth in Tenn. Code Ann. § 47-18-111.

80.    Defendant's activities do not fit or meet any of the exceptions specified under Tenn. Code Ann. § 47-18-111.

81.    The Defendant committed the following acts without limitations that are also unfair or deceptive practices thus, the Plaintiff is entitled to recover under the Tennessee Consumer Protection Act.

   a.  Defendant knowingly misrepresented relative facts or policy provisions relating to the coverage at issue.

   b.  Defendant failed to adopt and implement reasonable standards for the prompt investigation and settlement of claims arising under its policies.

   c.  The payment of this claim is not governed by more specific standards, therefore, the Defendant failed to attempt in good faith to effectuate prompt, fair and equitable settlement of the claim submitted by this Defendant in which its liability is clear.

   d.  The Defendant has compelled the insured and beneficiary to a life insurance contract to institute suit to recover amounts due under its policies by offering substantially less than the amounts ultimately to be recovered in this suit brought by the Plaintiffs.

   e.  Defendant has refused to pay these claims without conducting a reasonable investigation. Defendant has failed in the case of a claim

11

09743-67888 (NES)

denial to promptly provide a reasonable and accurate explanation for the basis of such action.

f.   Defendant has also engaged in an unfair trade practice from and in this State and an unfair method of competition or unfair deceptive act or practice in the business of insurance. Further, the Defendant has committed this with such frequency as to indicate a general business practice.

g.   Defendant had made, issued, circulated or caused to be made, issued or circulated an estimate, illustration, circular, or statement, sales presentation, omission or comparison that misrepresents the benefits advantages and conditions of a term or policy; uses a name or title of a policy or class of policies misrepresenting the true nature of the policy or class of policies or; and it is a misrepresentation including an intentional misquote or premium rate for the coverage allotted and for the purpose of inducing or tending to induce the purchase lapse for future exchange or conversion or surrender of any policy.

h.   Defendants have made, published, disseminated, circulated or placed before the public, or caused, directly or indirectly to be made, published, disseminated, circulated or placed before the public in a newspaper, magazine or other publication, or in the form of a notice, circular, pamphlet, letter or poster, or over any radio or television station, or in any other way, an advertisement, announced or statement containing an assertion, representation or a statement with

12

09743-67888 (NES)

the respect to the business of insurance or with the respect to any insurer and the conduct of its business, that is untrue, deceptive, and misleading.

i.  Defendant has made or permitted to be made an unfair discrimination between individuals of the same class and essentially the same hazard in the amount of premium, policy fees or a rate charge for any accident insurance and the benefits payable under any accident insurance and in the terms or conditions of the policy.

j.  Defendant has refused to insure or limit the amount of coverage available to an individual because of marital status.

k.  Defendant has made misrepresentation in its insurance application by making a false or fraudulent statement of representation relative to an application for a policy for the purpose of obtaining a fee, commission, money, or other benefit from an individual person.

l.  All of the above actions listed in this count constitute a violation of the Tennessee Consumer Protection Act for which Plaintiffs are entitled to recover all damages allowable under the act and punitive damages.

82.  Plaintiffs bring this action to recover damages permitted by the Tennessee Consumer Protection Act.

83.  Defendant's unfair or deceptive acts or practices were willful or knowing and Plaintiffs are entitled to treble damages under Tenn. Code Ann. § 47-18-109.

84.  The acts and practices of insurance companies, such as Defendant are not outside the scope of the Tennessee Consumer Protection Act.

13

09743-67888 (NES)

85.     This Insurance company should be held liable under the act because its advertising execution of the policy, handling of the claim and denial of the claim was unfair and deceptive.

86.     As a result of Defendant's violation of the Tennessee Consumer Protection Act, Plaintiffs suffered losses.

## COUNT III- BAD FAITH REFUSAL TO PAY

87.     Paragraphs 1-86 are re-alleged as if they were fully restated herein.

88.     Plaintiffs in this matter made a demand for payment under a valid insurance policy pursuant to Tenn. Code Ann. § 56-7-105.

89.     Defendant has no basis for denying the claim.

90.     Defendant has refused to pay the claim.

91.     Defendant's actions refusing to pay the claim were not in good faith.

92.     Following their demand for payment of the claim, Plaintiffs waited sixty (60) days to file this action.

93.     As a result of Defendant's actions, Plaintiffs have suffered losses and are entitled to the bad faith penalty as defined by Tenn. Code Ann. § 56-7-105.

## COUNT IV-NEGLIGENCE

94.     Paragraphs 1-93 are hereby re-alleged as if they were fully restated herein.

95.     Defendant owed Plaintiffs said duty to investigate the claim properly

14

09743-67888 (NES)

before determining that they were not responsible for its payments.

96.    Defendant, by accepting premium payments on the insurance policy, further owed Plaintiffs a duty to pay valid claims.

97.    Defendant owed Plaintiffs a duty when sending unsolicited advertisements and applications to not provide misleading, false, or intentionally misrepresent the coverage of a policy being applied for under such application.

98.    Defendant owes a duty to Plaintiffs that if they are going to review applications and accept coverage for some but intentionally line out coverage for others, they have adopted that those individuals named are insured under the policy.

99.    Defendant has breached all of these duties to Plaintiffs by failing to pay the valid claim and their other actions listed herein.

100.   The actions by the Defendant were willful, reckless, and/or intentional thus entitling the Plaintiffs to an award of punitive damages.

101.   As a result of Defendant's breaches of these duties, Plaintiff has suffered damages.

## COUNT V- UNJUST ENRICHMENT

102.   Paragraphs 1-101 are hereby re-alleged as if they were fully restated herein.

103.   Defendant accepted premium payments from the Plaintiff in exchange for insurance coverage for the individuals listed to be insured under the application.

104.   Defendant has refused to provide the insurance for which premiums were paid.

15

09743-67888 (NES)

105.    As a result, Plaintiffs have suffered damages.

## COUNT VI- UNLAWFUL INSURANCE ACT

106.    Paragraphs 1-105 are hereby re-alleged as if they were fully restated herein.

107.    Defendant, in its actions of disseminating an unsolicited application and advertisement to Plaintiff, Pearlie Green, indicating only that the coverage she was seeking was one million ($1,000,000.00) dollars per each insured was in violation of Tenn. Code Ann. §§ 56-53-101 et seq.

108.    Defendant in its fraudulent advertisement acted with actual malice as defined by Tenn. Code Ann. § 56-53-101 (1).

109.    The contract at issue is an insurance policy as defined by Tenn. Code Ann. § 56-53-101 (3).

110.    The transaction in which this fraud occurred was an insurance transaction as defined by Tenn. Code Ann. § 56-53-101 (5).

111.    The Defendant is an entity falling under the definition of insurer as provided by Tenn. Code Ann. § 56-53-101 (6).

112.    The Defendant's dissemination of this advertisement and application constitutes a pattern of practice as defined by Tenn. Code Ann. § 56-53-101 (7).

113.    The Defendant qualifies as a person as it is a corporation under the definition of person in Tenn. Code Ann. § 56-53-101 (8).

114.    The Plaintiffs paid a premium as defined by Tenn. Code Ann. § 56-53-101 (10) in this insurance transaction.

09743-67888 (NES)

115.    Defendant's actions were reckless as defined by Tenn. Code Ann. § 56-53-101 (13).

116.    Defendant's action violate the above referenced section in this count because they have presented, caused to be presented, or prepared with the knowledge or belief that it will be presented, by an insurer or insurance professional in connection with an insurance transaction. Information that the Defendant knew contained false representations or representation the falsity of which the Defendant had recklessly disregarded as to a material fact and withheld a material fact in the solicitation or sale of an insurance policy or purported insurance policy.

117.    Such actions violate Tenn. Code Ann. § 56-53-103.

118.    According to Defendant's violation of Tenn. Code Ann. § 56-53-101. Plaintiffs are entitled to three times the actual damages suffered which was the failure to pay the policy as it was advertised of one million ($1,000,000.00) dollars for the life of Robert Billups, attorney's fees, pre-judgment and post-judgment interests and all other remedies provided under the statute cited in this count and all other remedies under §§ 56-53-101 et seq.

119.    As a result of all of these violations, Plaintiffs have suffered damages.

## COUNT VII- FRAUD

120.    Paragraphs 1-119 are hereby re-alleged as if they were fully restated herein.

121.    Defendant, in its actions of disseminating an unsolicited application and advertisement to Plaintiff, Pearlie Green, indicating only that the coverage she was

09743-67888 (NES)

seeking was one million ($1,000,000) dollars per each insured when the coverage that was procured was actually far less than the amount the she was made to believe that she was getting or had purchased.

122.    Defendant knew that the Plaintiff was not receiving the one million dollar ($1,000,000.00) coverage that she intended or purchased, but was getting coverage which was far less than the one million dollars ($1,000,000.00).

123.    The Defendant intended to get the Plaintiff to spend the most for coverage which Defendant knew that Plaintiff would not actually receive.

124.    The Defendant knew that Plaintiff would have to rely on its representation of the insurance coverage because Plaintiff did not solicit the materials and was not in the same position to understand the intricacies of the policy.

125.    The Defendant knew that Plaintiff would have to rely on his fraudulent representations to determine what she felt was the best coverage for her and her family.

126.    The Plaintiff relied on this fraudulent representation because she purchased the coverage with the belief that she was purchasing one million dollar ($1,000,000.00) coverage for her and her family.

127.    The Plaintiff was charged and continues to be charged for coverage that she never received.

128.    Defendant in its fraudulent advertisement acted with actual malice.

129.    As a result of all of these actions, Plaintiffs have suffered damages.

WHEREFORE, PREMISES CONSIDERED, PLAINTIFF PRAYS:

1.    For a jury of twelve (12) to try this action.

18

09743-67888 (NES)

2.      For Plaintiff to be granted a judgment against the Defendant for the sum of money to be determined by the jury to be sufficient to compensate them for the damages complained herein.

3.      For the full value of the policy as advertised of one million ($1,000,000.00) dollars for the life of Robert Billups.

4.      For damages Plaintiff, Pearlie Green has sustained in paying premiums for a policy which insured her for an amount that was misleading and deceptive in which she believed was one million ($1,000,000.00) dollars which Defendant contends was not.

5.      Ms. Pearlie Green be awarded damages for the change or uninsurability of her under a policy that she sought of one million ($1,000,000.00) dollars as the time elapsed between the institution of this policy and the date on which Ms. Green learned of the true nature of the policy.

6.      That Pearlie Green be entitled to recover for the deceptive act of Defendant of continually deducting the larger family plan payment under this policy that continues even today when the policy covered only an individual and should have been subject to the individual premium following the death of Robert Billups.

7.      That Plaintiffs be awarded reasonable attorney's fees pursuant to the Tennessee Consumer Protection Act, the Tennessee Bad Faith Refusal to Pay and §§ 56-53-101 et seq.

8.      Defendant be taxed with the cost of this civil action.

9.      Defendant pay treble damages under the Consumer Protection Act and Tenn. Code Ann. §§ 56-53-101.

09743-67888 (NES)

10.   Defendant pay a penalty of twenty-five (25%) percent above their actual liability pursuant to the bad faith refusal to pay statute.

11.   Defendant be made to pay punitive damages.

12.   Plaintiffs recover both pre and post judgment interest.

13.   All other damages allowed under Tennessee law.

14.   Discretionary cost as authorized by the rules of law.

15.   Further and general relief as justice may require.

Respectfully submitted,

**RAINEY, KIZER, REVIERE & BELL, P.L.C.**

By: _____

RUSSELL E. REVIERE (BPR No. 07166)
NATHAN E. SHELBY (BPR No. 026583)
MICHAEL BURNETT JOINER (BPR 28221)
Attorneys for Plaintiffs
209 East Main Street
P.O. Box 1147
Jackson, TN 38302-1147
(731) 423-2414

09743-67888 (NES)

## **COST BOND**

This firm stands as sureties for costs in this matter not to exceed $1,000.00.

RUSSELL E. REVIERE (BPR No. 07166)
NATHAN E. SHELBY (BPR No. 026583)
MICHAEL BURNETT JOINER (BPR 28221)

Application to Mutual of Omaha Insurance Company for accidental death insurance available under Policy Form E42AD.

### Coverage Applied for

PLEASE REPLY BY: March 2, 2007 R52

070134556        T02 K FEB 26 2007
PEARLIE MARIE GREEN
2719 ENTERPRISE AVE
MEMPHIS TN 38114-3309                DTC   FEB 09 07

MM 2-27-D

☐ $1,000,000.00
Individual Plan
☐ $24.95 A MONTH
Family Plan
☑ $37.95 A MONTH

☐ $750,000.00
Individual Plan
☐ $18.95 A MONTH
Family Plan
☐ $28.95 A MONTH

☐ $500,000.00
Individual Plan
☐ $12.95 A MONTH
Family Plan
☐ $19.85 A MONTH

(If name or address is incorrect, please change)

Telephone ( _____ ) _____
                Area Code          Number

I Wish To Insure:

| Person(s) To Be Insured/ Full Name | AGE | Mo. | Day | Yr. | M | F |
|---|---|---|---|---|---|---|
| Applicant  Pearlie M Green | 53 | 03 | 29 | 53 | ✓ | |
| Spouse  Robert Billups | 66 | 10 | 11 | 40 | ✓ | |
| Child  Romien Burks | 33 | 11 | 2 | 73 | ✓ | |
| Child  Kimeka G. Galloway | 19 | 6 | 26 | 86 | | ✓ |

Please fill in the information requested above for each person to be insured. If you need more space to list your dependents, list them on a separate sheet of paper and include when mailing this application.

I have enclosed $ 37.95 to pay for my first month's premium for the benefit amount checked above. After the first month's coverage, I wish to be billed (check one only):
☐ Annually   ☑ Monthly through the Easy Pay Option (Complete the Easy Pay Option authorization included on the postage paid envelope.)

My Beneficiary (to be paid at death): (Note: If no Beneficiary is named, benefits will be paid to the Insured's estate.)
Please Print  Gregory         A        Burks    Son
                     First                   Initial              Last              Relationship

I understand that this coverage is not in force until the Policy Date which will be shown on the Policy I will receive. I agree that initial and renewal premiums for the coverage I select will be billed to me as indicated above.

Any person who, with intent to defraud or knowing that he or she is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

| Signature of Applicant | X Pearlie M Green | Date 1 /25 /07 |
|---|---|---|

I AUTHORIZE AND APPROVE THE ALTERATION(S) ON MY APPLICATION
REMOVING THE INDIVIDUALS THAT HAVE BEEN LINED THRU

MA5844-33

Mutual of Omaha Insurance Company • Home Office: Omaha, Nebraska

000099994        MAC 19434_1106

You can choose to stop receiving "prescreened" offers of insurance from this and other companies by calling toll-free 1-888-567-8688.
See PRESCREEN & OPT OUT NOTICE on the back of the application for more information about prescreened offers.


EXHIBIT
A

| RKB | SCHEDULE OF BENEFITS | PREPARED ON 10/27/2009 |
|---|---|---|
| | | DATE |

| COVERAGE NUMBER | EFFECTIVE DATE | PAID TO |
|---|---|---|
| E42ADR52-792588-27M | 02/26/2007 | 11/26/2009 |

| PREMIUM | MODE |
|---|---|
| $43.90 | MONTHLY |

**GROUP NAME (IF APPLICABLE)**

DEPENDENTS COVERED        SERIES    20348

E42ADR52-792588-27M

DIRECT RESPONSE

PLAN OWNER/MEMBER
PEARLIE M GREEN
3938 RIDGEDALE ST
MEMPHIS TN 38127

### BASIC COVERAGE AND/OR RIDER BENEFITS

PI COM CARRIER: $1,000,000 AUTO-PED: $300,000
ALL OTHER: $200,000
SP COM CARRIER: $500,000 AUTO-PED: $150,000
ALL OTHER: $100,000
CH COM CARRIER: $100,000 AUTO-PED: $30,000
ALL OTHER: $20,000 IF INSURED

LOSS OF LIFE BENEFITS PAYABLE AS SHOWN BELOW

0KK0M                SEE ATTACHED RIDER
                     RIDER DATE 09/26/2009

ALL OF THE ABOVE IS SUBJECT TO THE BENEFITS, CONDITIONS AND LIMITATIONS OF THE ATTACHED PLAN.




**MUTUAL *of* OMAHA INSURANCE COMPANY**
Mutual of Omaha Plaza, Omaha, NE 68175, 402 342 7600

**Mutual *of* Omaha**

# ACCIDENTAL DEATH INSURANCE POLICY

## IMPORTANT NOTICE

The premium you paid and the application you completed have put this policy in force as of the Policy Date. That date is shown on the policy schedule. A copy of your application is attached.

## 60-DAY RIGHT TO EXAMINE POLICY

Please read your policy. If, for any reason, you are not satisfied with it, you may return your policy to us within 60 days of its delivery. We will then promptly refund all premiums paid, and the policy will be considered never to have been issued.

## PLEASE READ YOUR APPLICATION

**Please read the attached copy of your application. If anything is not correct or if you know of any misstatement in your application, you should tell us. Your policy was issued on the basis that all information in the application is correct and complete. If not, your policy may be void.**

## GUARANTEED RENEWABLE TO AGE 80

This policy is guaranteed renewable until the Primary Insured reaches Age 80. This means you have the right to continue this coverage until you reach Age 80. During that time, we cannot cancel the policy unless you do not make the required premium payment before the end of each grace period. To continue the policy, you must make sure that you pay the premiums when they are due.

## PREMIUMS SUBJECT TO CHANGE

The premium for this policy may change, but only if the same change is made on all policies of this form issued to persons of the same classification in your state. We must give you at least 31 days (45 days in Florida and North Carolina; 60 days in Wisconsin) advance written notice before we change premiums.

**This Is a Legal Contract Between You and Us**
**READ YOUR POLICY CAREFULLY**
**THIS IS AN ACCIDENT-ONLY POLICY WHICH DOES NOT PAY**
**BENEFITS FOR LOSS RESULTING FROM SICKNESS**
**THIS POLICY IS GUARANTEED RENEWABLE TO AGE 80**
**To Inquire About Your Coverage, or to Express a Concern,**
**You May Call Us Toll-Free At:**
**For Customer Service 1-800-775-6000**
**For Claims Service 1-800-775-1000**

*Daniel P. Neary*

Chairman of the Board and
Chief Executive Officer

*Michael Huss*

Corporate Secretary

Form E42AD-20348

0501500000

## TABLE OF CONTENTS                                          PAGE

DEFINITIONS ........................................................................................................1

CLASSIFICATION OF INJURIES ........................................................................1

    Class 1 -- Common Carrier or Scheduled Airline Injury ..............................1
    Class 2 -- Private Automobile or Pedestrian Injury .....................................2
    Class 3 -- All Other Unspecified Injuries ...................................................2

LOSS OF LIFE BENEFITS .....................................................................................2

BENEFICIARY PROVISION ...................................................................................2

EXCLUSIONS ...........................................................................................................2

TERMINATION ........................................................................................................3

SPOUSE AND DEPENDENT CHILD PROVISIONS ...........................................3

    Eligibility ......................................................................................................3
    Newborn Children .........................................................................................3
    When Dependent Child and Spouse Insurance Ends ....................................4
    Continuation of Coverage for Your Spouse ................................................4

HOW TO FILE A CLAIM ........................................................................................4

    Notice of Claim .............................................................................................4
    Claim Forms ..................................................................................................4
    Proof of Loss .................................................................................................4

TIME OF PAYMENT OF CLAIMS ........................................................................5

PAYMENT OF CLAIMS ..........................................................................................5

TERM OF COVERAGE ...........................................................................................5

POLICY PROVISIONS .............................................................................................5

    Entire Contract and Changes ........................................................................5
    Time Limit on Certain Defenses ..................................................................5
    Grace Period ..................................................................................................5
    Reinstatement ................................................................................................5
    Physical Examinations and Autopsy .............................................................5
    Change of Beneficiary ..................................................................................5
    Misstatement of Age .....................................................................................6
    Legal Actions ................................................................................................6
    Other Insurance with Us ...............................................................................6
    Illegal Occupation .........................................................................................6
    Conformity with State Statutes .....................................................................6

## DEFINITIONS

**Age 80** means the first Policy Renewal Date that coincides with or next follows an Insured Person's 80th birthday.

**Beneficiary** means the person(s) or legal entity you name in the application to receive any Loss of Life Benefits under this policy or an attached rider, if any.

**Common Carrier** means an entity that is licensed to transport passengers for hire in any public land, air or water conveyance.

**Dependent Child** means your and/or your Spouse's dependent child who is insured under this policy in accordance with the Spouse and Dependent Child Provisions.

**Injury** means bodily harm which:

    (a)  is the direct result of an accident or trauma that occurs while your policy is in force; and
    (b)  results in loss independently of sickness and all other causes (except for sickness caused by the injury).

**Insured Person** means you, your Spouse or your Dependent Child who is insured under this policy.

**Policy Date** means the date coverage is effective under this policy as shown on the policy schedule.

**Policy Renewal Date** means the month and day your policy's premium payment is due. The frequency of the policy renewal date can vary depending on whether the premiums are paid on a monthly, quarterly, semiannual or annual basis.

**Primary Insured** means the person named as the insured on the policy schedule.

**Private Automobile** means a four-wheeled motor vehicle designed to carry passengers and travel on public streets and highways. A private automobile does not include a vehicle intended for public transportation or for hire.

**Scheduled Airline** means a company furnishing air transportation on fixed schedules to ticketed passengers. The aircraft flown must be:

    (a)  operated by a scheduled air carrier pursuant to economic authority issued by the Civil Aeronautics Board; or
    (b)  operated by an intrastate scheduled airline of United States registry licensed by a duly constituted authority having jurisdiction over civil aviation in the state in which said airline operates.

**Spouse** means your lawful spouse who is insured under this policy, in accordance with the Spouse and Dependent Child Provisions.

**We, Us or Our** means Mutual of Omaha Insurance Company.

**You or Your** means the person named as the insured on the policy schedule, who is also the Primary Insured.

## CLASSIFICATION OF INJURIES

A covered Injury will be categorized under one of the following three classifications.

<u>Class 1 – Common Carrier or Scheduled Airline Injury</u>

This type of Injury is that which is sustained while riding as a passenger, and not as an operator, pilot or member of the crew, in any public land, air or water conveyance provided by a Common Carrier or Scheduled Airline. The Common Carrier or Scheduled Airline must be licensed primarily for passenger service.

**Class 2 -- Private Automobile or Pedestrian Injury**

This type of Injury is that which is sustained while driving or riding in any Private Automobile. It also includes an Injury received when struck while a pedestrian by any motor vehicle ordinarily operated on the public streets and highways.

**Class 3 -- All Other Unspecified Injuries**

These types of Injuries are those sustained in a manner not specified under Class 1 or Class 2, and not otherwise excluded under your policy.

## LOSS OF LIFE BENEFITS

If, while insured under this policy, an Insured Person sustains a covered Injury which results in loss of life within 365 days following the date of the Injury, we will pay the loss of life benefit shown on the policy schedule.

Loss of life benefits are based on the appropriate class as described in the Classification of Injuries provision. The loss of life benefit payable for the Primary Insured will be:

    (a)  for a Class 1 Injury, 100%;
    (b)  for a Class 2 Injury, 30%;
    (c)  for a Class 3 Injury, 20%;

of the Class 1 Primary Insured amount shown on the policy schedule.

The loss of life benefit for your Spouse will be 50% of the amount otherwise payable for the Primary Insured.

The loss of life benefit for a Dependent Child will be 10% of the amount otherwise payable for the Primary Insured.

## BENEFICIARY PROVISION

Upon your death as the result of a covered Injury, any Loss of Life Benefits due will be paid:

    (a)  to your designated Beneficiary; or
    (b)  in the event no Beneficiary is named or living, to your estate.

Upon the death of your Spouse or a Dependent Child as the result of a covered Injury, any Loss of Life Benefits due will be paid:

    (a)  to you, if living; otherwise,
    (b)  to your estate.

Your Beneficiary may be changed in accordance with the Change of Beneficiary provision.

## EXCLUSIONS

This policy pays benefits only for loss resulting from covered Injuries. Benefits are not payable for:

    (a)  loss that begins while this policy is not in force;
    (b)  loss resulting from an act of declared or undeclared war;
    (c)  loss sustained while serving in the armed forces;
    (d)  loss caused by intentionally self-inflicted Injury, while sane or insane (sane only in Colorado);
    (e)  loss resulting from an Insured Person's commission or attempted commission of a felony;

(f) loss caused by an Insured Person's suicide or attempted suicide, while sane or insane (sane only in Colorado and Missouri);

(g) loss resulting directly or indirectly from disease or bodily infirmity;

(h) loss resulting from an Insured Person's being intoxicated (as determined and defined by the laws of the jurisdiction in which the loss or cause of loss occurred; for the purposes of this exclusion, the laws governing the operation of motor vehicles while intoxicated will apply);

(i) loss resulting from an Insured Person's being under the influence of any controlled substance (except for narcotics given on the advice of a physician); or

(j) loss resulting from a moving vehicle accident occurring while an Insured Person is engaged in a contest of speed, organized or not.

## TERMINATION

This policy will terminate on the earliest of:

(a) the Policy Renewal Date, if sufficient premium has not been paid before the end of the grace period;

(b) the date we receive your request to cancel the policy (in which case the grace period will not apply);

(c) your reaching Age 80, unless your eligible covered Spouse submits a request to become the Primary Insured; or

(d) the date of your death, unless your eligible covered Spouse submits a request to become the Primary Insured.

In the event of cancellation or death, we will promptly return the unearned portion of any premium paid. If we accept a premium after an Insured Person reaches Age 80, coverage will continue for that person until the end of the period for which premium was accepted.

Termination of coverage will not affect any claim for benefits for a covered Injury sustained while this policy was in force.

## SPOUSE AND DEPENDENT CHILD PROVISIONS

Coverage is provided under this policy for your eligible family members only if you apply for coverage for them, we accept the application and you pay the required premium.

### Eligibility

Your eligible family members include:

(a) your Spouse who is under Age 80;

(b) any unmarried Dependent Child of yours and/or your Spouse's (whether or not the child lives with you) who is under age 21 (age 22 in North Dakota) or who is under age 25 if he or she is enrolled as a full-time student in an accredited college or university; and

(c) any adopted child or any child in your custody, pursuant to an interim court order of adoption vesting temporary care of the child in you regardless of whether a final order granting adoption is issued, and who also qualifies as a Dependent Child under item (b).

### Newborn Children

Any child of yours born while this policy is in force will be automatically insured from birth for 31 days or until the first day of the second month following birth, whichever is longer. Coverage for the newborn child will continue in effect thereafter, without evidence of insurability, if Dependent Child coverage is in effect or upon receipt by us of your written request for Dependent Child coverage and payment of the required additional premium prior to the end of the automatic coverage period. Coverage will be subject to all provisions of this policy applicable to Dependent Child coverage.

Form E42AD-20348                     Page 3                     0503000000

### When Dependent Child and Spouse Insurance Ends

The insurance for your Spouse and/or a Dependent Child will end on the first of the following dates:

    (a) the first Policy Renewal Date on or after the date the eligibility ceases;
    (b) the date your insurance ends;
    (c) the date of death of your Spouse or a Dependent Child.

You should notify us in writing when or if your insured Spouse and/or last Dependent Child is no longer eligible for coverage. If we accept a premium for your Spouse or Dependent Child after we receive your written notice, his or her insurance will continue until the end of the period for which premium is paid. If you do not give us notice, we will refund the premium we accept for Spouse or Dependent Child coverage after he or she is no longer eligible.

If, on the date a Dependent Child's insurance would end, he or she is not capable of self-sustaining employment because of mental retardation or physical handicap, and is chiefly dependent upon you for support and maintenance, we will continue coverage for that child for as long as this policy remains in force and the incapacity continues. We, however, may ask you prior to the date coverage for a Dependent Child is to end whether or not he or she is incapacitated. Unless proof of such incapacity is sent to us within 60 days of our inquiry, we may terminate the child's coverage under this policy.

### Continuation of Coverage for Your Spouse

Spouse coverage under this policy terminates when your Spouse reaches Age 80 and this policy is still in force. If this policy terminates because of your reaching Age 80 or your death, your Spouse can continue this coverage in force if he or she is under Age 80. To do so, your Spouse must submit a request to become the policy's new Primary Insured and pay the required premium within 60 days after the Policy Renewal Date which next follows the date your coverage ended.

If covered on the date marriage terminates because of divorce, your ex-Spouse can also be issued his or her own replacement policy without evidence of insurability. He or she must apply for coverage and pay the required premium within 60 days after the Policy Renewal Date which next follows the date marriage terminates. In the event this policy form is no longer offered, we will issue a policy then available which is most comparable to this policy.

## HOW TO FILE A CLAIM

### Notice of Claim

You must give us written notice of a claim within 20 days (30 days in Mississippi; 60 days in Kentucky and Wyoming; six months in Montana) after a loss occurs or starts, or as soon as is reasonably possible. You may give the required notice or you may have someone do it for you. The notice should give your name and policy number as shown on the policy schedule. Notice should be mailed to us at Omaha, Nebraska.

### Claim Forms

When we receive your notice, we will send you forms for filing proof of loss. If we do not send them within 15 days after the giving of such notice, you can meet the proof of loss requirement by giving us a written statement of what happened. We must receive this statement within the time given for filing proof of loss.

### Proof of Loss

You must give us written proof of loss within 90 days after the date of such loss. If it was not reasonably possible for you to give us written proof within the required time, we will not reduce or deny the claim for this reason if the proof is supplied as soon as reasonably possible. In any case, proof must be furnished no later than 12 months (15 months in Hawaii) from the time otherwise specified, except in the absence of legal capacity.

Form E42AD-20348                           Page 4

## TIME OF PAYMENT OF CLAIMS

Benefits for a covered loss will be paid as soon as we receive proper written proof of loss.

## PAYMENT OF CLAIMS

Benefits will be paid to you, if living. In the event of your death, benefits will be paid to either your Beneficiary or your estate, in accordance with the Beneficiary Provision.

If any benefits are payable to your estate, to a minor or to any person not legally able to give a valid release, we may pay up to $1,000.00 to any relative of yours by blood or marriage whom we find entitled to the payment. Payment made in good faith will fully discharge us to the extent of the payment.

## TERM OF COVERAGE

Your coverage starts on the Policy Date at 12:01 A.M. where you live. It ends at 12:01 A.M. where you live on the first Policy Renewal Date. Each time you renew your policy by paying the premium within the 31-day grace period, the new term begins when the old term ends.

## POLICY PROVISIONS

### Entire Contract and Changes

This policy and any attachments are the entire contract of insurance. No agent may change it in any way. Only an officer of ours can approve a change. Any such change must be shown in your policy.

### Time Limit on Certain Defenses

After two years from the date a person becomes covered under this policy, we cannot use misstatements, except fraudulent misstatements in your application, to void coverage or deny a claim for loss incurred after the two-year period.

### Grace Period

Your premium must be paid on or before the date it is due or during the 31-day grace period that follows. This policy stays in force during your grace period.

### Reinstatement

Your policy will lapse if you do not pay your premium before the end of the grace period. Your policy will be put back in force if we accept a premium after the policy has lapsed. The reinstated policy only covers loss due to Injuries that occur after the date of reinstatement. In all other respects, you and we have the same rights under this policy as were in effect before it lapsed.

### Physical Examinations and Autopsy

We, at our expense, may have an Insured Person examined when and as often as is reasonable while a claim is pending. We may also have an autopsy done (at our expense) where it is not prohibited by law.

### Change of Beneficiary

Only you have the right to change the Beneficiary. Consent of the Beneficiary is not required for any change of Beneficiary. Also, no such consent is required for surrender of this policy or to make any other change in this policy.

Form E42AD-20348                    Page 5                    0504000000

To change a Beneficiary, send us a written request. When recorded and acknowledged by us, the change will be effective as of the date you signed the request. The change will not apply to any payments made or other action taken by us before recording.

**Misstatement of Age**

If the age of an Insured Person has been misstated, all benefits payable are those which the premium paid would have purchased at the correct age. If the coverage issued in this policy would not have been available based on the correct date of birth, the Insured Person will have no coverage, and we will refund any premiums paid.

**Legal Actions**

You cannot bring a legal action to recover under your policy for at least 60 days after you have given us written proof of loss. You cannot start such an action more than three years after the date proof of loss is required. (In Florida, legal action cannot be brought after the applicable statute of limitations has expired from the time written proof of loss is required.)

**Other Insurance with Us**

A person may be insured under only one policy of this form at any one time. If a person is insured under more than one, he or she may select the one that is to remain in effect. In the event of death, this selection will be made by the Beneficiary or estate. We will return all premiums paid (less any claims paid) for policies that do not remain in effect.

**Illegal Occupation**

We are not liable for any loss resulting from an Insured Person being engaged in an illegal occupation.

**Conformity with State Statutes**

If any provision of this policy conflicts with the laws of the state where you reside on that provision's effective date, it is amended to conform to the minimum requirements of those laws.

Countersigned By: _____
                              Licensed Resident Agent

Form E42AD-20348



## HOSPITAL INDEMNITY ACCIDENT BENEFITS RIDER

The premium you paid and the application you completed have put this rider in force as of the Rider Date. This rider is made a part of your policy or certificate to which it is attached. It is subject to all parts of your policy or certificate not in conflict with this rider. In the event of a conflict between this rider and any other provision of the policy or certificate, this rider shall control.

    Rider Date (same as the Policy Date or Certificate Date if no date is shown)  _____

    Rider Premium (included in the policy or certificate premium if no amount is shown) $ _____

### DEFINITIONS

The definitions shown in the policy or certificate apply to this rider. In applying them, substitute "rider" for "policy" or "certificate." In addition, the following definitions apply to this rider.

Confinement means confinement as a resident inpatient in a Hospital for at least 12 hours because of Injuries. Confinement must be upon the recommendation of and under the general supervision of a Physician.

Hospital means any of the following places:
- (a) a place which is licensed or recognized as a general hospital by the proper authority of the state in which it is located;
- (b) a place operated for the care and treatment of resident inpatients with a registered graduate nurse (RN) always on duty and with a laboratory and X-ray facility;
- (c) a place recognized as a general hospital by the Joint Commission on the Accreditation of Hospitals; or
- (d) a place certified as a hospital by Medicare.

Not included is a hospital or institution or a part of a hospital or institution which is licensed or used principally:
- (a) for the care or treatment of drug addicts or alcoholics; or
- (b) as a clinic, continued or extended care facility, skilled nursing facility, convalescent home, rest home, nursing home or home for the aged.

Physician means a person, other than you or a member of your family, duly licensed and legally qualified to diagnose and treat an Injury. He or she must be providing services within the scope of his or her license.

### HOSPITAL INDEMNITY ACCIDENT BENEFITS

When an Insured Person, while insured under this rider, is confined in a Hospital as the result of an Injury, we will pay $60.00 for each day of Confinement. Benefits are limited to a maximum of 365 days for any one accident.

### EXCLUSIONS

The Exclusions shown in the policy or certificate apply to this rider. In applying them, substitute "rider" for "policy" or "certificate." In addition, no benefits are payable for loss that results from Injuries sustained while this rider is not in force.

### TERMINATION

This rider terminates when your policy or certificate terminates.

                    MUTUAL OF OMAHA INSURANCE COMPANY

                                Corporate Secretary

Form 0KK0M                         -1-

STATE OF TENNESSEE
ENT OF COMMERCE AND INS
O JAMES ROBERTSON PARKWA
ASHVILLE, TENNESSEE 37243

7009 2820 0003 2647 3618

7009 2820 0003 2647 3618                6/8/10
MUTUAL OF OMAHA INSURANCE COMPANY
MUTUAL OF OMAHA PLAZA
OMAHA, NE 68175

3LAW

FIRST CLASS

$ 07.34°
MAILED FROM ZIP CODE 3724