PEARLIE M. GREEN and GREGORY )
A. BURKS,                     )
                              )
    Plaintiffs,          )
                              )
v.                            )      No. 10-2487
                              )
MUTUAL OF OMAHA INSURANCE      )
COMPANY,                      )
                              )
    Defendant.           )

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

Before the Court is the July 2, 2010 Motion to Dismiss filed by Defendant Mutual of Omaha Insurance Company ("Mutual"). (Def.'s Mot. to Dismiss Pls.' Compl., ECF No 4.) ("Def.'s Mot.") Plaintiffs Pearlie M. Green ("Green") and Gregory A. Burks (collectively, "Plaintiffs") responded jointly on July 29, 2010. (Pls.' Resp. to Def.'s Mot. to Dismiss, ECF No. 8.) ("Pls.' Resp.") Mutual replied on August 20, 2010. (Def.'s Reply in Supp. of Its Mot. to Dismiss Pls.' Compl., ECF No. 12.) ("Def.'s Reply")

Plaintiffs allege that Mutual has refused to pay insurance benefits for the death of Robert Billups ("Billups") and that Mutual is liable for (1) breach of contract, (2) violating the Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Ann. §§ 47-18-101 et seq., (3) bad faith refusal to pay their claim, in

violation of Tenn. Code Ann. § 56-7-105, (4) negligence, (5) unjust enrichment, (6) an unlawful insurance act, in violation of Tenn. Code Ann. § 56-53-103, and (7) fraud. (See Compl. ¶¶ 26, 33, 42, 85-86, 91-93, 99-101, 103-05, 117, 121-29, ECF No. 1-1.) For the reasons below, Mutual's Motion to Dismiss is GRANTED.

## I.    Factual Background

Around January 2007, Green, a Tennessee resident, received a prescreened application for accidental death insurance from Mutual providing three levels of coverage ($1 million, $750,000, or $500,000) and two plan options (an individual plan or a family plan). (See Compl. ¶¶ 7, 9-11.) Green chose a family plan with $1 million coverage and agreed to have the premium amount automatically deducted from her checking account each month. (See id. ¶ 13; Ex. A, at 29, ECF No. 1-1.)

The accidental death insurance application provided boxes to list individuals to be insured under the family plan directly following preprinted designations for the applicant, his or her spouse, and two children. (See Compl. ¶ 14; Ex. A, at 29.) It stated: "Please fill in the information requested above [in the boxes] for each person to be insured. If you need more space to list your dependents, list them on a separate sheet of paper and include when mailing this application." (See Ex. A, at 29.) Within the boxes, Green listed her name next to the preprinted

designation for the applicant, Billups' name next to the preprinted designation for the spouse, and Roman Burks and Kimeka L. Galloway next to the preprinted designation for children. (See id.; Compl. ¶¶ 15-16.) Although Green listed Billups as her spouse, she states in Plaintiffs' Complaint that "Robert Billups was listed in the spouse designation, although his name differed from Ms. Green's, because the only other designation in which his name would fit would be a child." (Compl. ¶ 16.) Although Green listed Billups as her spouse on the application, Plaintiffs do not aver in the Complaint that Green and Billups were married. (See id.)

Green submitted the application on January 25, 2007. (Id. ¶ 24.) After Green had submitted the application, Mutual mailed a copy of it to her with the name Roman Burks lined out with pen under the persons to be insured because he was over twenty-one years old.[1] (Id. ¶¶ 19, 21.) On the insurance application, Green had stated that Roman Burks was thirty-three years old and that his date of birth was November 7, 1973. (See Ex. A, at 29.) When Mutual returned a copy of the application to Green, Mutual stamped the application with text stating "I authorize and approve the alteration(s) on my application removing the individuals that have been lined thru" and space for Green to

---

[1] The Complaint does not state whether a copy of Green's application was returned to her before or after Mutual issued the insurance policy.

sign below the text. (See id.) Green did not sign that authorization. (Compl. ¶ 20.)

After receiving the application, Mutual issued an accidental death insurance policy. (See id. ¶ 25.) The policy stated:

> Please read the attached copy of your application. If anything is not correct or if you know of any misstatement in your application, you should tell us. Your policy was issued on the basis that all information in the application is correct and complete. If not, your policy may be void.

(Ex. A, at 31.) The policy also stated that eligible family members covered under the family plan included the applicant's spouse if the spouse was under age eighty, any unmarried dependent child of the applicant or spouse under age twenty-one, and any adopted child or child in the applicant's custody who qualified as an unmarried dependent child. (See id. at 35.) It defined "Insured Person" as "you, your Spouse or your Dependent Child who is insured under this policy" and defined "Spouse" as "your lawful spouse who is insured under this policy, in accordance with the Spouse and Dependent Child Provisions." (Id. at 33.) The policy also provided that "[t]his policy and any attachments are the entire contract of insurance" and that "[a]fter two years from the date a person becomes covered under this policy, we cannot use misstatements, except fraudulent misstatements in your application, to void coverage or deny a

claim for loss incurred after the two-year period." (Id. at 37.)

After the insurance policy had been in full force and effect for two years, Billups died on August 3, 2009, due to complications from a motorcycle accident. (See id. ¶¶ 26-27.) Plaintiffs submitted a claim to Mutual on August 13, 2009. (See id. ¶ 28.) On November 2, 2009, Mutual sent a letter to Green denying coverage for the death of Billups. (See id. ¶ 30.) In response, Plaintiffs sent a bad faith demand letter to Mutual on January 5, 2010. (See id. ¶ 31.) After mailing the bad faith demand letter, Plaintiffs filed the Complaint on May 24, 2010. (See Compl. 1.)

## II. Jurisdiction and Choice of Law

Plaintiffs filed a Complaint against Mutual in the Circuit Court of Tennessee for the 30th Judicial District at Memphis, Tennessee. (Compl. 1.) Mutual removed the case to this Court, alleging that this Court has diversity jurisdiction. (See Notice of Removal ¶¶ 2-3, ECF No. 1.) Green is a Tennessee citizen and Gregory A. Burks is an Arkansas citizen. (Id. ¶ 2; Compl. ¶¶ 1-2.) Mutual is a Nebraska corporation with its principal place of business in Nebraska. (Notice of Removal ¶ 2.) Thus, complete diversity exists. See V&M Star, LP v. Centimark Corp., 596 F.3d 354, 355 (6th Cir. 2010) (citation omitted). Because Plaintiffs seek to recover, inter alia, $1

million under the accidental death insurance policy, more than $75,000 is in controversy, and the amount-in-controversy requirement is satisfied. See 28 U.S.C. § 1332(a); Ozormoor v. T-Mobile USA, Inc., 354 F. App'x 972, 973-74 (6th Cir. 2009); Hayes v. Equitable Energy Res. Co., 266 F.3d 560, 573 (6th Cir. 2001). Therefore, this Court has diversity jurisdiction. See 28 U.S.C. § 1332(a). Because it has original jurisdiction based on diversity of citizenship, removal was proper. See 28 U.S.C. § 1441(a); Lincoln Prop. Co. v. Roche, 546 U.S. 81, 89-90 (2005).

In a diversity action, state substantive law governs. See Brocklehurst v. PPG Indus., Inc., 123 F.3d 890, 894 (6th Cir. 1997) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)). A federal district court is required to apply the choice-of-law rules of the state in which it sits. See Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496 (1941); Montgomery v. Wyeth, 580 F.3d 455, 459 (6th Cir. 2009) (citation omitted). "In Tennessee, absent a valid choice of law provision, the rights and obligations under an insurance policy are governed by the law of the state where the insurance policy was 'made and delivered.'" Charles Hampton's A-1 Signs, Inc. v. Am. States Ins. Co., 225 S.W.3d 482, 485 n.1 (Tenn. Ct. App. 2006) (quoting Ohio Cas. Ins. Co. v. Travelers Indem. Co., 493

S.W.2d 465, 467 (Tenn. 1973)); accord Yarnell v. Transamerica Life Ins. Co., 694 F. Supp. 2d 857, 861 (E.D. Tenn. 2010).

Here, the Complaint states that "[t]he advertisement and enticement which preceded the execution of the life insurance contract took place in Shelby County, Tennessee" and "the contract was executed in Shelby County, Tennessee." (Compl. ¶ 6.) Plaintiffs invoke Tennessee law, and both parties assume that Tennessee law governs. (See, e.g., id. ¶¶ 81, 88-93, 107-19; Def.'s Mem. of Law in Supp. of Its Mot. to Dismiss Pls.' Compl. 3, ECF No. 4-1 ("Def.'s Mem.").) The facts alleged in the Complaint demonstrate that the insurance policy was made and delivered in Tennessee. (See Compl. ¶¶ 1, 6-7, 24-25.) The insurance policy attached to the Complaint does not contain a choice of law provision, and the parties have not brought such a provision to the Court's attention. (See Ex. A, at 31-40.) Therefore, the Court will apply Tennessee substantive law to Plaintiffs' claims. See In re Korean Air Lines Disaster of Sept. 1, 1983, 932 F.2d 1475, 1495 (D.C. Cir. 1991); Charles Hampton's A-1 Signs, 225 S.W.3d at 485 n.1.

## III. Standard of Review

In addressing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff and accept all well-pled factual allegations as true.

League of United Latin Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007). A plaintiff can support a claim "by showing any set of facts consistent with the allegations in the complaint." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 (2007). This standard requires more than bare assertions of legal conclusions. Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 361 (6th Cir. 2001) (citation omitted). "[A] formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Any claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Twombly, 550 U.S. at 555). Nonetheless, a complaint must contain sufficient facts "to 'state a claim to relief that is plausible on its face'" to survive a motion to dismiss. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice." Id. (citation omitted). A plaintiff with no facts and "armed with nothing more than conclusions" cannot "unlock the doors of discovery." Id. at 1950.

## IV. Analysis

Plaintiffs allege that Mutual is liable for (1) breach of contract, (2) violating the TCPA, (3) bad faith refusal to pay their claim, (4) negligence, (5) unjust enrichment, (6) an unlawful insurance act, and (7) fraud. (See Compl. ¶¶ 26, 33, 42, 85-86, 91-93, 99-101, 103-05, 117, 121-29.) Mutual argues that Plaintiffs have not stated a claim on which relief may be granted and that the Court should dismiss Plaintiffs' Complaint with prejudice. (See Def.'s Mot. 1; Def.'s Mem. 9.)

### A. Breach of Contract

Plaintiffs allege that Mutual is liable for breach of contract because Billups was insured under Green's accidental death insurance policy when Billups died and Mutual refused to pay benefits for his death. (See Compl. ¶¶ 38-42; Pls.' Resp. 2-4.) Under Tennessee law, "[i]nsurance policies are contracts and, thus, subject to the same rules of construction that are used to interpret other types of contracts." Spears v. Tenn. Farmers Mut. Ins. Co., 300 S.W.3d 671, 678 (Tenn. Ct. App. 2009) (citation omitted); accord Merrimack Mut. Fire Ins. Co. v. Batts, 59 S.W.3d 142, 148 (Tenn. Ct. App. 2001) (citations

omitted); <u>Demontbreun v. CNA Ins. Cos.</u>, 822 S.W.2d 619, 621 (Tenn. Ct. App. 1991) (citation omitted).

"The respective rights of an insured and an insurance company are governed by their contract of insurance." <u>Spears</u>, 300 S.W.3d at 678 (citation omitted). "As with any other contract, courts must give effect to the parties' intentions as reflected in their written contract of insurance." <u>Id.</u> (citations omitted). "In so doing, the insurance policy should be construed as a whole in a reasonable and logical manner, giving the policy's terms, as written, their natural and ordinary meaning." <u>Id.</u> at 679 (citations omitted); <u>see</u> <u>Guiliano v. Cleo, Inc.</u>, 995 S.W.2d 88, 95 (Tenn. 1999) (citation omitted).

"While language that is susceptible to more than one reasonable interpretation is ambiguous and should be construed in favor of the insured, 'the courts should not favor either party if the policy's language is unambiguous and free from doubt and should enforce unambiguous policies as written.'" <u>Spears</u>, 300 S.W.3d at 679 (quoting <u>Quintana v. Tenn. Farmers Mut. Ins. Co.</u>, 774 S.W.2d 630, 632 (Tenn. Ct. App. 1989)). When the policy's language is clear and unambiguous, its literal meaning is controlling in the absence of fraud, overreaching, or unconscionability. <u>See</u> <u>Maggart v. Almany Realtors, Inc.</u>, 259 S.W.3d 700, 704 (Tenn. 2008) (citation omitted); <u>Spears</u>, 300

S.W.3d at 679; Nat'l Ins. Ass'n v. Simpson, 155 S.W.3d 134, 138 (Tenn. Ct. App. 2004) (citations omitted); Merrimack Mut. Fire Ins. Co., 59 S.W.3d at 148.

In insurance contracts, "'the insured is conclusively presumed to have knowledge of, and to have assented to, all the terms, conditions, limitations, provisions or recitals in the policy,' irrespective of whether the insured actually read, or could read, the insurance contract." Webber v. State Farm Mut. Auto. Ins. Co., 49 S.W.3d 265, 274 (Tenn. 2001) (quoting Gen. Am. Life Ins. Co. v. Armstrong, 185 S.W.2d 505, 507 (Tenn. 1945)). Regardless of whether the insured read her policy, "it is settled law in Tennessee that [s]he is nonetheless charged with knowledge of [its] contents." Finchum v. Patterson, No. M2007-00559-COA-R3-CV, 2008 WL 2019408, at *7 (Tenn. Ct. App. May 9, 2008) (quoting Reed v. Nat'l Found. Life Ins. Co., No. 03A01-9603-CV-00081, 1996 WL 718467, at *3 (Tenn. Ct. App. Dec. 16, 1996)).

Here, the parties agree that, notwithstanding Green's listing of Billups as her spouse on her application for insurance, Billups was not, in fact, Green's spouse. (See Def.'s Mem. 4-5; Pls.' Resp. 2-3; Def.'s Reply 5.) They also agree that the policy's definition of "Spouse" would exclude him as an insured individual. (See Def.'s Mem. 4-5; Pls.' Resp. 2-3; Def.'s Reply 5.) Nevertheless, Plaintiffs present four

11

arguments that Billups is insured under the policy. (See Pls.'
Resp. 2-4.)

First, Plaintiffs argue that Mutual's acceptance of Green's
application with Billups listed as an insured individual and
failure to cross out Billups' name under the heading of
"Person(s) To Be Insured" when it returned a copy of the
application to Green after crossing out Roman Burks' name
operates as acceptance of coverage for Billups. (See id. at 2;
Ex. A, at 29.) Contending that insurance applications form part
of contracts for insurance, Plaintiffs argue that the overall
contract is ambiguous because the policy excludes Billups as an
insured individual, but the application lists him as an insured
individual. (See Pls.' Resp. 2-3.) Because ambiguities in
insurance contracts are construed in favored of the insured, see
Spears, 300 S.W.3d at 679 (citation omitted), Plaintiffs contend
that the insurance policy covers Billups. (See Pls.' Resp. 2-
3.)

Plaintiffs' argument is not well-taken. Under the plain,
unambiguous terms of the insurance policy, only the applicant
and the applicant's spouse and dependent children are entitled
to coverage. (See Ex. A, at 33 (defining "Insured Person" as
"you, your Spouse or your Dependent Child who is insured under
this policy" and defining "Spouse" as "your lawful spouse who is
insured under this policy in accordance with the Spouse and

12

Dependent Child Provisions"), 35 (stating that eligible family members covered under the policy include the applicant's spouse if under age eighty, any unmarried dependent child of the applicant or spouse under age twenty-one, and any adopted child or child in the applicant's custody who qualified as an unmarried dependent child).) The policy instructed Green to inform Mutual if any information on her application was not correct. (See id. at 31.) It warned her that her policy might be void if the information on her application was not correct and complete. (See id.)

Mutual correctly argues that, if Plaintiffs' theory were correct, a deliberate misrepresentation by an applicant on an insurance application would override the plain language and terms of the insurance policy actually issued. (See Def.'s Reply 5.) Insurance applicants would have an incentive to misrepresent the truth, and insurance companies could never be certain of the terms governing policies without exhaustively investigating the truth of every factual assertion made by applicants. (See id.) Contrary to Plaintiffs' argument, Tennessee law does not demand that result. Rather than encouraging misrepresentations, Tennessee law provides that a person's misrepresentations on an insurance application may serve as grounds for an insurer to deny coverage, see Vt. Mut. Ins. Co. v. Chiu, 21 S.W.3d 232, 235-37 (Tenn. Ct. App. 2000),

or for criminal liability, see Tenn. Code Ann. § 56-53-102(a)(1)(A).

Because "[i]t is well settled in Tennessee that an insurance policy is a contract, subject to the principles of contract law," Kiser v. Wolfe, No. E2009-01529-COA-R9-CV, 2010 WL 2160780, at *6 (Tenn. Ct. App. May 28, 2010) (emphasis added), the literal meaning of the plain, unambiguous terms in Green's insurance policy is controlling, see Maggart, 259 S.W.3d at 704; Spears, 300 S.W.3d at 679; Nat'l Ins. Ass'n, 155 S.W.3d at 138; Merrimack Mut. Fire Ins. Co., 59 S.W.3d at 148. That literal meaning excludes coverage for Billups. Green is "conclusively presumed to have knowledge of, and to have assented to" the policy's provisions. Webber, 49 S.W.3d at 274; see Finchum, 2008 WL 2019408, at *7. Beyond excluding coverage for Billups, the policy states that Mutual has issued it "on the basis that all information in the application is correct and complete" and warns Green that the policy might be void if that information is not correct and complete. (Ex. A, at 31.) Therefore, Plaintiffs have failed to state a plausible breach of contract claim on this ground. See Iqbal, 129 S. Ct. at 1949.

Second, Plaintiffs argue that Billups was an insured individual because listing Billups as Green's spouse was a misstatement, not a fraudulent misstatement; Billups died more than two years after the insurance policy became effective; and

14

the insurance policy states that "[a]fter two years from the date a person becomes covered under this policy, we cannot use misstatements, except fraudulent misstatements in your application, to void coverage or deny a claim for loss incurred after the two-year period." (See Ex. A, at 37; Pls.' Resp. 3.) Plaintiffs do not allege in the Complaint, however, that Mutual's reason for denying coverage was Green's misstatement. Instead, the Complaint simply states that Mutual denied coverage and that Mutual's denial was in breach of contract. (See Compl. ¶¶ 30, 33, 35, 38-42.)

Under the plain language of the policy attached to the Complaint, the provision invoked by Plaintiffs does not apply to Mutual's denial of coverage. The provision only applies "[a]fter two years from the date a person becomes covered under this policy." (Ex. A, at 37 (emphasis added).) Because Billups was not the applicant, the applicant's spouse, or an unmarried dependent child, Billups never became covered under the policy. (See id. at 33, 35.) Therefore, the policy provision is not applicable.

Third, Plaintiffs argue that Mutual waived the right to claim that the policy did not cover Billups by returning Green's application to her with one name crossed out and Billups' name not crossed out, accepting premiums, and having reason to suspect Billups was not Green's spouse because of their

different last names. (See Pls.' Resp. 3.) Under Tennessee law, "[w]aiver is a voluntary relinquishment or abandonment of a known right or privilege." Faught v. Estate of Faught, 730 S.W.2d 323, 325 (Tenn. 1987) (citations omitted). "Thus, when an individual does not know of his rights or when he fails to fully understand them, there can be no effective waiver of those rights." Id. at 326. To be valid, waiver must be intentional and "proven by a clear, unequivocal and decisive act of the party, showing a purpose to forgo the right or benefit which is waived." E&A Ne. Ltd. P'ship v. Music City Record Distribs., Inc., No. M2005-01207-COA-R3-CV, 2007 WL 858779, at *6-7 (Tenn. Ct. App. Mar. 21, 2007) (citations omitted).

Under the facts alleged in the Complaint, the only basis on which Mutual could have suspected that Green's listing Billups as her spouse was not correct was their different last names. (See Ex. A, at 29.) The Tennessee Supreme Court has held that, "a woman, upon marriage, has a freedom of choice. She may elect to retain her own surname or she may adopt the surname of her husband. The choice is hers." Dunn v. Palermo, 522 S.W.2d 679, 688 (Tenn. 1975). Because Tennessee law does not require married women to assume their husbands' last names and married women's retention of their last names has become increasingly common, Plaintiffs have not alleged facts that plausibly

demonstrate that Mutual knew Billups was not Green's spouse and voluntarily waived the limitations under its policy.

Fourth, Plaintiffs argue that Mutual "is estopped from claiming that Green and Burks may not recover for Billups' death." (Pls.' Resp. 4.) The basis of their argument is that Mutual returned Green's application to her with one name crossed out and Billups' name not crossed out, accepted premiums, and misrepresented the extent of coverage provided by Mutual in the application sent to Green. (See id.) Under Tennessee law, an essential element of estoppel is the party claiming estoppel's "[l]ack of knowledge and of the means of knowledge of the truth as to the facts in question." Harvey v. Farmers Ins. Exch., 286 S.W.3d 298, 304 (Tenn. Ct. App. 2008) (quoting Callahan v. Town of Middleton, 292 S.W.2d 501, 508 (Tenn. Ct. App. 1954)); accord Finchum, 2008 WL 2019408, at *6 n.3. As discussed above, Tennessee law conclusively presumes that Green had knowledge of and assented to the provisions of the insurance policy. See Webber, 49 S.W.3d at 274; Finchum, 2008 WL 2019408, at *7. Therefore, Plaintiffs cannot plausibly demonstrate that Green lacked knowledge of the policy's provisions excluding coverage for Billups because he was not her spouse. See Harvey, 286 S.W.3d at 305 (concluding that an insurance company could not be estopped to deny coverage where the insurance policy

unambiguously excluded coverage for the insured's automobile accident).

Construing the Complaint in the light most favorable to Plaintiffs and accepting Plaintiffs' well-pled factual allegations as true, Green's insurance policy did not cover Billups. Therefore, Plaintiffs' breach of contract claim cannot survive Mutual's Motion to Dismiss. See Iqbal, 129 S. Ct. at 1949.

**B.    TCPA Claim**

"The Tennessee Consumer Protection Act prohibits '[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce,' and in particular, 'any . . . act or practice which is deceptive to the consumer or to any other person.'" Conner v. Hardee's Food Sys., Inc., 65 F. App'x 19, 25 (6th Cir. 2003) (citations omitted); see Timoshchuk v. Long of Chattanooga Mercedes-Benz, No. E2008-01562-COA-R3-CV, 2009 WL 3230961, at *3 (Tenn. Ct. App. Apr. 14, 2010). "A party bringing a TCPA action must prove that there was some deception, misrepresentation or unfairness, regardless of any breach of contract." Barrett v. Vann, No. E2006-01283-COA-R3-CV, 2007 WL 2438025, at *18 (Tenn. Ct. App. Aug. 29, 2007) (quoting Hall v. Hamblen, No. M2002-00562-COA-R3-CV, 2004 WL 1838180, at *4 (Tenn. Ct. App. Aug. 16, 2004)).

As discussed above, Tennessee law conclusively presumes that Green had knowledge of and assented to her insurance policy's provisions, see Webber, 49 S.W.3d at 274; Finchum, 2008 WL 2019408, at *7. The policy's plain terms unambiguously excluded coverage for Billups. Plaintiffs have not alleged any facts showing deception, misrepresentation, or unfairness. Therefore, Plaintiffs' TCPA claim cannot survive Mutual's Motion to Dismiss. See Iqbal, 129 S. Ct. at 1949; Spears, 300 S.W.3d at 683.

### C. Bad Faith

To recover penalties for an insurance company's bad faith denial of claims, plaintiffs must prove, inter alia, that their insurance policy became due and payable and that the insurance company's refusal to pay was not in good faith. See Ginn v. Am. Heritage Life Ins. Co., 173 S.W.3d 433, 443 (Tenn. Ct. App. 2004) ("In order to recover bad faith penalties under [Tenn. Code Ann. § 56-7-105(a)], a plaintiff must prove: '(1) the policy of insurance must, by its terms, have become due and payable, (2) a formal demand for payment must have been made, (3) the insured must have waited 60 days after making demand before filing suit (unless there was a refusal to pay prior to the expiration of the 60 days), and (4) the refusal to pay must not have been in good faith.'" (quoting Stooksbury v. Am. Nat'l Prop. & Cas. Co., 126 S.W.3d 505, 519 (Tenn. Ct. App. 2003)).

As the Tennessee Court of Appeals has explained, "The bad faith penalty is not recoverable in every refusal of an insurance company to pay a loss. An insurance company is entitled to rely upon available defenses and refuse payment if there is [sic] substantial legal grounds that the policy does not afford coverage for the alleged loss." _Id._ (quoting _Sisk v. Valley Forge Ins. Co._, 640 S.W.2d 844, 852 (Tenn. Ct. App. 1982)). When an insurance company properly denies a claim under the terms of an insurance policy, the insurance company does not act in bad faith. _See_ _Spears_, 300 S.W.3d at 683 (stating that, because the court found that the plaintiffs were barred from recovering under an insurance policy because of their material breach of the policy's terms, their claim of bad faith denial of coverage was pretermitted); _Lane v. Am. Gen. Life & Accident Ins. Co._, 252 S.W.3d 289, 295-97 (Tenn. Ct. App. 2007) (affirming summary judgment for an insurance company where plaintiff complained that the insurance company denied her claim in bad faith and the insured individual made material misrepresentations increasing the risk of loss, providing a lawful basis for the insurance company to deny coverage).

As discussed above, Green's insurance policy did not cover Billups. Because the insurance policy did not cover him, Green has not pled facts plausibly demonstrating that Mutual's refusal to provide benefits for Billups' death was in bad faith.

Construing the Complaint in the light most favorable to Plaintiffs and accepting Plaintiffs' well-pled factual allegations as true, Green's insurance policy did not become due and payable, and Mutual had substantial legal grounds to deny coverage under the terms of the insurance policy. Therefore, Plaintiffs may not recover bad faith penalties. See Spears, 300 S.W.3d at 683; Lane, 252 S.W.3d at 295-97; Ginn, 173 S.W.3d at 443. Plaintiffs' claim for bad faith penalties cannot survive Mutual's Motion to Dismiss. See Iqbal, 129 S. Ct. at 1949.

**D. Negligence**

Under Tennessee law, plaintiffs must prove five elements to prevail on a negligence claim: "(1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of the duty; (3) an injury or loss; (4) causation in fact; and (5) proximate causation." Rice v. Sabir, 979 S.W.2d 305, 308 (Tenn. 1998) (citing Bradshaw v. Daniel, 854 S.W.2d 865, 869 (Tenn. 1993)). "A risk is unreasonable and gives rise to a duty to act with due care if the foreseeable probability and gravity of harm posed by defendant's conduct outweigh the burden upon defendant to engage in alternative conduct that would have prevented the harm." McCall v. Wilder, 913 S.W.2d 150, 153 (Tenn. 1995) (citation omitted). Several factors guide determinations about whether a risk is unreasonable:

the foreseeable probability of the harm or injury
occurring; the possible magnitude of the potential
harm or injury; the importance or social value of the
activity engaged in by defendant; the usefulness of
the conduct to defendant; the feasibility of
alternative, safer conduct and the relative costs and
burdens associated with that conduct; the relative
usefulness of the safer conduct; and the relative
safety of alternative conduct.

Id. (citation omitted).

Here, Plaintiffs assert that Mutual has breached four
duties: (1) its duty to investigate their claim properly before
denying coverage, (2) its duty to pay valid claims, (3) its
duty, when sending unsolicited insurance applications, not to
provide misleading or false information and not to misrepresent
intentionally the coverage of policies, and (4) its duty to
insure individuals listed on insurance applications as persons
to be insured when other individuals are removed from the list.
(See Compl. ¶¶ 95-98.)  In their Response to Mutual's Motion to
Dismiss, Plaintiffs do not cite any precedent recognizing or
imposing those duties under Tennessee law.  (See Pls.' Resp. 6-
7.)

Essentially, Plaintiffs argue that Mutual had a duty to
investigate whether Green misrepresented her spouse on her
insurance application before providing coverage.  Although some
harm is possible if an insurance company does not investigate
whether insurance applicants tell the truth on their
applications, the burden on insurance companies to engage in

that alternative conduct would be significant. To prevent misapprehensions about coverage, insurers could not accept the truth of any factual assertions made by insurance applicants and would be required to investigate every assertion, including representations about medical history and living arrangements. Because the burden of preventing the harm would far exceed the foreseeable probability and gravity of harm, Tennessee law did not impose a duty on Mutual to investigate whether Green misrepresented her spouse before Mutual provided coverage. See McCall, 913 S.W.2d at 153; cf. Tenn. Code Ann. § 56-53-102(a)(1)(A) (providing for criminal liability in some circumstances for misrepresentations on insurance applications); Vt. Mut. Ins. Co., 21 S.W.3d at 237 (concluding that a person's misrepresentations to an insurance company about the operation of a business on her premises provided lawful grounds for the insurance company to deny coverage); Brewer v. Mid-West Nat'l Life Ins. Co. of Tenn., 605 S.W.2d 232, 236 (Tenn. Ct. App. 1979) ("Inquiries with respect to specific diseases contained in the application for family group policy indicate[d] that the insurer regarded those diseases as material to the risk, and it was the duty of the applicant to fully and frankly disclose the true condition as known to him." (quoting Little v. Washington Nat'l Ins. Co., 241 S.W.2d 838, 841 (Tenn. Ct. App. 1951))). Therefore, Plaintiffs cannot plausibly demonstrate that Mutual

was negligent, and their negligence claim cannot survive Mutual's Motion to Dismiss. See Iqbal, 129 S. Ct. at 1949.

### E. Unjust Enrichment

Under Tennessee law, plaintiffs must prove three elements to recover for unjust enrichment: (1) "[a] benefit conferred upon the defendant by the plaintiff," (2) "appreciation by the defendant of such benefit," and (3) "acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof." Freeman Indus., LLC v. Eastman Chem. Co., 172 S.W.3d 512, 525 (Tenn. 2005) (quoting Paschall's, Inc. v. Dozier, 407 S.W.2d 150, 155 (Tenn. 1966)). "The most significant requirement of an unjust enrichment claim is that the benefit to the defendant be unjust." Id. (citations omitted). "Unjust enrichment, however, is a substitute for a contract and not a doctrine to be applied to contracts since unjust enrichment presupposes that one party has endowed another with a benefit without compensation." Hayes v. Washburn, No. M2006-01135-COA-R3-CV, 2007 WL 3202765, at *5 (Tenn. Ct. App. Oct. 31, 2007). Where a valid contract exists between the parties, recovery under unjust enrichment is not appropriate. See id. at *5-6 (citation omitted); Metro. Gov't of Nashville & Davidson Cnty. v. Cigna Healthcare of Tenn., Inc., 195 S.W.3d 28, 33 (Tenn. Ct. App. 2005).

Here, Green's insurance policy was a valid contract between Green and Mutual.  See Kiser, 2010 WL 2160780, at *6.  Green's insurance premiums would have been the same had she not listed Billups as her spouse on the insurance application, and the policy would have remained a family plan covering Green and her child, Kimeka L. Galloway.  (See Ex. A, at 29-30, 33-35.)  Because she and her child were covered and her rate would have been the same, Plaintiffs cannot plausibly demonstrate that Mutual's acceptance of Green's premiums unjustly enriched Mutual.  The existence of a valid contract between Green and Mutual also bars Plaintiffs from recovering for unjust enrichment.  See Hayes, 2007 WL 3202765, at *5-6; Metro. Gov't of Nashville & Davidson Cnty., 195 S.W.3d at 33.  Therefore, Plaintiffs' unjust enrichment claim cannot survive Mutual's Motion to Dismiss.  See Iqbal, 129 S. Ct. at 1949.

**F.   Unlawful Insurance Act**

Under Tennessee law, an insurer that "[p]resents, causes to be presented, or prepares with knowledge or belief that it will be presented" in a solicitation for sale of an insurance policy "any information that the [insurer] knows to contain false representations, or representations the falsity of which the [insurer] has recklessly disregarded, as to any material fact, or that withholds or conceals a material fact" has committed an unlawful insurance act.  Tenn. Code Ann. § 56-53-103(a)(2)(A).

As discussed above, Tennessee law conclusively presumes that Green had knowledge of and assented to her insurance policy's provisions. See Webber, 49 S.W.3d at 274; Finchum, 2008 WL 2019408, at *7. Because of that conclusive presumption, Plaintiffs cannot plausibly demonstrate that Green lacked knowledge of the policy's provisions excluding coverage for Billups as a non-spouse and limiting the amount of coverage for certain classes of injuries. (See Ex. A, at 30, 33-35.) Plaintiffs have not pled facts plausibly suggesting that Mutual knowingly or recklessly made false representations as required to prove an unlawful insurance act. See Tenn. Code Ann. § 56-53-103(a)(2)(A). Therefore, Plaintiffs' unlawful insurance act claim cannot survive Mutual's Motion to Dismiss. See Iqbal, 129 S. Ct. at 1949.

### G. Fraud

Under Tennessee law, "[t]he elements of fraud are: (1) an intentional misrepresentation of a material fact, (2) knowledge of the representation's falsity, (3) an injury caused by reasonable reliance on the representation, and (4) the requirement that the misrepresentation involve a past or existing fact." Kincaid v. SouthTrust Bank, 221 S.W.3d 32, 40 (Tenn. Ct. App. 2006) (citation omitted); accord W. Express, Inc. v. Brentwood Servs., Inc., No. M2008-02227-COA-R3-CV, 2009 WL 3448747, at *9 (Tenn. Ct. App. Oct. 26, 2009).

As discussed above, Tennessee law conclusively presumes that Green had knowledge of and assented to her insurance policy's provisions. See Webber, 49 S.W.3d at 274; Finchum, 2008 WL 2019408, at *7. Plaintiffs have not pled facts plausibly suggesting that Mutual misrepresented a material fact as required to recover on their claim of fraud. See Kincaid, 221 S.W.3d at 40. Given Tennessee's conclusive presumption that Green knew the contents of her policy, Plaintiffs have also failed to plead facts plausibly suggesting that they reasonably relied on a misrepresentation by Mutual. Therefore, Plaintiffs' fraud claim cannot survive Mutual's Motion to Dismiss. See Iqbal, 129 S. Ct. at 1949.

**V.    Conclusion**

For the foregoing reasons, the Court GRANTS Mutual's Motion to Dismiss. Plaintiffs' Complaint is DISMISSED WITH PREJUDICE. See Pratt v. Ventas, Inc., 365 F.3d 514, 522 (6th Cir. 2004).

So ordered this 13th day of January, 2011.

s/ Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE